FILED

AUG 17 2005

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 04-50026-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDING AND RECOMMENDATION |
| vs. | ) | ON MOTION TO SUPPRESS |
| | ) | |
| ROBERT RAYMOND TAIL, | ) | |
| | ) | |
| Defendant. | ) | |

      Robert Raymond Tail, by and through his court-appointed counsel, George Grassby, filed a motion to suppress certain statements made on three separate occasions. In addition, defense counsel filed a brief in support of the motion, and the government filed their response. An evidentiary hearing was held on this motion on August 16, 2005.

## FACTS

      On July 18, 2003, Richard Lauck, Special Agent for the FBI, contacted the defendant, Robert Raymond Tail, at Sioux San Hospital. He was told that Mr. Tail was in Hope Lodge, a drug and alcohol treatment center on the campus of Sioux San Hospital. Agent Lauck had previously interviewed witnesses, and was investigating the rape of a minor on the Pine Ridge Indian Reservation. Agent Lauck went to the Hope Lodge, and was informed by employee Gene Tyon that Mr. Tail was in an intensive counseling session, and that he would have to wait to visit with him. The director, Florence Janis, later brought Mr. Tail to the small office area where Agent Lauck was located. Present in the small room was Agent Lauck, Mr. Tail, Mr. Tyon, and Florence Janis. When the defendant came into the room, he said he knew why Agent Lauck was there to question him. He said it was about a young girl. Agent Lauck asked the question, "Who was that young girl?" Mr. Tail responded, "Jessica." Next, Mr. Tail stated he wanted an attorney, and would not answer further questions without an attorney. He further said he would talk about this event in his counseling sessions. Agent Lauck told him that he was the subject of a criminal investigation, and then the conversation ended. The room was not locked. The interview lasted

only a minute or two with only one question being asked by Agent Lauck prior to the request for an attorney.

On April 7, 2004, Agent Lauck was informed that there was a warrant issued for Mr. Tail's arrest. He was further informed that the tribal police had located him, and Agent Lauck went to the tribal jail to transport Mr. Tail to the federal building in Rapid City. Mr. Tail was under arrest, he was handcuffed, and restrained, and placed in the front seat of the vehicle for transportation to Rapid City. During the course of this transportation to Rapid City there were many statements made by the defendant, some of which were incriminating. Agent Lauck testified he did not ask him any questions, and that he made only friendly, minimal, and noncommital responses. The reason his demeanor was friendly is that he does not want trouble while transporting prisoners alone. Among the incriminating statements that the defendant made was that he expected to go to prison, he hoped he would only get a couple of years, and that his family would wait for him. The detailed nature of these statements appear on Exhibit 2, the FBI 302 report of this interview. Agent Lauck testified that he never asked the defendant a question on the trip to Rapid City. There were no <u>Miranda</u> warnings given, nor was he ever warned that statements he was making to the agent could be used against him. The trip to Rapid City lasted approximately two hours. The reason agent Lauck did not question the defendant is that he recalled specifically that the defendant has requested an attorney on the previous occasion almost a year before. He further testified that he did not encourage the defendant to talk to him. Agent Lauck did talk about some personal matters, such as his family, and the defendant invited him down to the reservation to go horseback riding with his family.

The third suppression issue involves statements the defendant made to BIA Special Agent John Long on September 25, 2003. The government was unable to produce Agent Long due to a death in the family, and agreed that they would not introduce any of these statements in their case in chief. Therefore, the suppression issue was moot. Whether these statements might be used in impeachment at the trial would be an issue that would be left up to the trial judge.

## DECISION

The July 8, 2003, contact at Hope Lodge involved a very brief encounter with one question, "Who was that young girl?" to which Mr. Tail responded, "Jessica." The questioning took place at a treatment facility where the defendant was residing, in the presence of his counselor, and the director. It was a small room, but there were no locked doors. No Miranda warnings were given, and therefore, the issue is whether or not this was an in custody interview. The interview was terminated as soon as Mr. Tail requested an attorney before answering any further questions. Applying the factors in United States v. Griffin, 922 F.2d 1343 (8th Cir. 1990), it is my finding and recommendation that this is a non-custodial interview. The interview did not last long enough to inform the suspect that the interview was voluntary, that he was free to go, and not under arrest. It is apparent that as soon as the defendant exercised his rights after the first question the interview was terminated. There was no restraint of the defendant's freedom of movement during questioning, there were no strong arm tactics or deceptive stratagems employed, the atmosphere was not police dominated, but more dominated by the officials from Hope Lodge. Obviously, the defendant was not placed under arrest at the end of the questioning. It is my finding and recommendation that the motion to suppress for this conversation be denied.

The second suppression issue is the transportation of the defendant from Pine Ridge to Rapid City on April 7, 2004. There is no question the defendant was in custody, he was in restraints having been arrested, and was taken to the federal courthouse in Rapid City. There is also no question that the Miranda warnings were not given in that Agent Lauck did not intend to question the defendant based upon his prior request for an attorney. Defense alleges that because Special Agent Lauck is a trained officer, he knows that riding in a police vehicle, and saying absolutely nothing, invites a prisoner to talk. That this situation was designed to elicit a response from the defendant. Defense attorney cites no law to back up this proposition, and Agent Lauck testified that often prisoners do talk while being transported, but sometimes they do not. In any event, the test under Rhode Island v. Innis, 446 U.S. 291 (1980), is whether or not there was direct

questioning or police practices that are likely to invoke an incriminating response from the suspect. In this case, there were no questions asked, there was nothing that was the functional equivalent of questioning, such as two officers visiting with each other, attempting to elicit a response from the defendant, and nothing but noncommital, short, friendly responses by Special Agent Lauck. Therefore, it is my finding and recommendation that the motion to suppress be denied for the reason that there was no questioning, and not even a functional equivalent of questioning on the trip to Rapid City.

The third suppression issue is the motion to suppress the statements defendant made to Special Agent Long of the BIA. It is my finding and recommendation that this motion be granted, subject to the right of the trial judge to allow these statements to be used for impeachment purposes should the appropriate circumstances arise.

Dated this 17th day of August, 2005.

BY THE COURT:

_____
MARSHALL P. YOUNG
UNITED STATES MAGISTRATE JUDGE

### NOTICE

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

[Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)]
[Nash v. Black, 781 F.2d 665 (8th Cir. 1986)]