UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 04-50026-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANT'S MOTION TO |
| | ) | SUPPRESS |
| ROBERT RAYMOND TAIL, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Robert Raymond Tail, is charged with the sexual abuse of two minors. Tail moved to suppress three different statements. (Docket 42). The government filed a response and memorandum in opposition. In Magistrate Judge Marshall Young's Findings and Recommendations, (Docket 100), he recommends denying the motion to suppress the statements made on July 18, 2003, (the hospital statement) and on April 7, 2004, (the vehicle statement). Magistrate Judge Young also recommended granting the motion to suppress the statement made on July 25, 2003, except for purposes of impeachment. Tail objects to the findings and recommendations in regards to the hospital statement and the vehicle statement. (Docket 103).

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to

which objection is made." 28 U.S.C. § 636(b)(1); see also <u>United States v. Lothridge</u>, 324 F.3d 599 (8th Cir. 2003); <u>Jones v. Pillow</u>, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u>; see also Fed. R. Civ. P. 72 (b). After a careful de novo review of the magistrate judge's findings and recommendations and a review of the record, the court accepts the findings and recommendations of the magistrate judge as supplemented herein.

**FACTUAL BACKGROUND**

**Hospital Statement**

On July 18, 2003, FBI Special Agent Lauck went to Hope Lodge, a drug and alcohol treatment facility, looking for Tail. Agent Lauck entered Hope Lodge, spoke with employee Gene Tyon, and asked to see Tail. Tyon went to get Florence Janis, the director of the facility, who said that Tail was in a counseling session and unavailable, but that Agent Lauck could speak with Tail if he waited until the session took a break. A few minutes later, Janis brought Tail into the small office area where Agent Lauck and Tyon were waiting. Agent Lauck introduced himself to Tail. Then, Tail said he

knew why Agent Lauck was there--it was about the "accusations being made by a young girl." (Tr. 7). Agent Lauck asked "who that young girl was?" (Tr. 7). Tail responded JH.[1] Tail then stated that he wanted an attorney, at which time Agent Lauck informed him that he was the subject of a criminal investigation and left. The whole contact lasted for a few minutes, and both Tyon and Janis remained in the room throughout. Nothing prevented Tail from leaving the room.

**Vehicle Statement**

On April 7, 2004, Agent Lauck transported Tail from the Pine Ridge jail to Rapid City. After picking up Tail, Agent Lauck handcuffed him and restrained him to the passenger seat of the vehicle. Agent Lauck neither advised Tail of his <u>Miranda</u> rights nor asked him any questions during the trip, which lasted approximately two hours and twenty minutes. Tail initiated a conversation and continued to talk to throughout the trip. Agent Lauck responded in a friendly, but limited, manner. During the conversation, Tail made several potentially incriminating statements, which Agent Lauck noted on a clip board while driving.

---

[1] The court uses "JH" rather than the victim's name because the victim is a minor. In actuality, Tail responded by saying the victim's name. (Tr. 7).

**DISCUSSION**

Tail contends that both the hospital statement and the vehicle statement are inadmissible as violative of his Fifth Amendment rights per Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "Under Miranda, the government is prohibited from using statements made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination and right to an attorney." United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005). "'[T]he coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" United States v. Lebrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Dickerson v. United States, 530 U.S. 428, 435, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000)) (alteration in original). Miranda warnings are only required if "a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

**I.   Hospital Statement**

Tail contends that the hospital statement is inadmissible because Agent Lauck did not advise him of his Miranda warnings.  (Docket 103). "Custody occurs either upon formal arrest or under any other

circumstances where the suspect is deprived of his freedom of action in any significant way." Griffin, 922 F.2d at 1348.  Custody exists when, under the totality of circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Lebrun, 363 F.3d at 720 (internal quote omitted).  In Griffin, the Eighth Circuit listed six indicia of custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349; accord United States v. Plumman, 409 F.3d 919, 924 (8th Cir. 2005).  The list is neither exhaustive, nor must "all of the foregoing indicia be presented by the factual circumstances of a case." Griffin, 922 F.2d at 1349.

Based on the above, the hospital statement was non-custodial. Throughout the encounter Tail had unrestrained freedom of movement. Agent Lauck testified that nothing "in the room would have blocked the defendant's access to leaving or exiting the room." (Tr. 8).  Tail was neither handcuffed nor physically restrained.  See Lebrun, 363 F.3d at 722.  Tail's

5

contention that he was under hospital restraint is wholly unsupported by the record. Agent Lauck did not employ strong arm tactics or deceptive stratagems. See Griffin, 922 F.2d at 1351. He merely introduced himself and asked a single question of clarification. (Tr. 7-8, 21). Nor was the encounter police dominated. See Griffin, 922 F.2d at 1352. Throughout the encounter, both Janis and Tyon remained in the room. (Tr. 8). While Agent Lauck was wearing a weapon during the interview, the weapon was covered from sight by a vest. (Tr. 5) Notably, Agent Lauck did not arrest Tail following the encounter. See Plumman, 409 F.3d at 925; Lebrun, 363 F.3d at 722. Finally, the encounter was particularly brief. See Griffin, 922 F.2d at 1348-49 (noting the effect of length of time). The contact lasted only minutes, and it was ended by Tail on his own accord when Tail requested an attorney. After Tail invoked his right to counsel, Agent Lauck left immediately. (Tr. 7-8). Based on this evidence, "[w]hatever coercion existed in this case was not of the sort that a reasonable person would perceive as restricting his freedom to depart." Lebrun, 363 F.3d at 722. Thus, Tail was not in custody.

Nor was the statement procured through interrogation. "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know

are reasonably likely to elicit an incriminating response from the suspect.'" United States v. Hull, No. 04-1607, 2005 WL 1993916, at *2 (8th Cir. Aug. 19, 2005) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)). "Miranda does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005). "An officer's request for clarification of a spontaneous statement generally does not constitute interrogation." Id.

During the encounter, Tail made two potentially incriminating declarations: (1) He stated that he knew Agent Lauck was there about the accusations made by a young girl; and (2) He responded with the name JH when Agent Lauck asked who the young girl was. The first declaration is admissible, volunteered information. Agent Lauck never asked a question. (Tr. 7). And an officer would not likely elicit an incriminating response by introducing themselves. See Chipps, 410 F.3d at 445 (holding that officer "was not likely to elicit incriminating evidence" when he told the defendant that he participated in the high speed pursuit of the defendant the previous day). Rather, Tail spontaneously volunteered the information, making it admissible. United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005).

Nor was the second declaration obtained through interrogation. Once Tail volunteered the first declaration, Agent Lauck asked "who that young

7

girl was?" (Tr. 7). He did so, because "[he] wanted to confirm that we were talking about the same person." (Tr. 7). Clarification of volunteered information qualifies as interrogation only if "it attempted to 'enhance [the defendant's] guilt.'" Chipps, 410 F.3d at 445 (quoting Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989)). Agent Lauck's question did not enhance Tail's guilt because the first declaration already acknowledged that a young girl made accusations against him. See id. (holding that agent's question about how long defendant knew about warrant did not attempt to enhance guilt because the defendant's volunteered statement "indicated that he had known about the warrant for some time"). Rather, Agent Lauck merely sought clarification of Tail's already incriminating statement. Accordingly, the second declaration is admissible.

In short, Miranda does not apply to Tail's hospital statement because it was not obtained through custodial interrogation. Accordingly, Tail's motion to suppress the hospital statement is denied.

**II.   Vehicle Statement**

Tail contends that Miranda prohibits the government's admission of his vehicle statement because Agent Lauck did not advise him of his Miranda rights. (Docket 103). As discussed previously, Miranda only applies to a statement obtained through custodial interrogation. Griffin,

922 F.2d at 1347. There is no dispute that Tail was in custody. The only issue remaining is whether Tail was interrogated.

Agent Lauck testified that he purposefully did not question Tail during the trip because Tail had previously invoked his right to counsel. (Tr. 36). Rather, Tail initiated the conversation. (Tr. 11). In response, Agent Lauck engaged in minimal, but friendly, conversation because in his experience this decreases the potential for problems with the prisoner. (Tr. 11, 35). The court finds Agent Lauck's testimony credible.

Tail contends that Agent Lauck engaged in the functional equivalent of questioning by "being polite and friendly" and conversing with him during the trip. (Docket 103). But this does not amount to the functional equivalent of interrogation. See United States v. Fleck, 413 F.3d 883, 893 (8th Cir. 2005). In Fleck, an officer was transporting two defendants. During the trip, the officer asked the defendants how they liked the food at their previous jail. During the conversation, the defendants volunteered incriminating information. In holding that Miranda did not apply, the Eighth Circuit stated that this was not "calculated to elicit an incriminating response . . . ." Id. Like the officer in Fleck, Agent Lauck's polite and friendly conversation is not the functional equivalent of interrogation.

Tail argues that the fact that Agent Lauck kept a clipboard next to him as he was driving is evidence that Agent Lauck intended to solicit

9

incriminating information from Tail.  Agent Lauck testified, however, that he routinely keeps a clipboard next to him to record information he receives and to write down beginning and ending mileage when transporting prisoners and where they are going.  (Tr. 26-30).  The court finds this testimony credible.  Furthermore, the utilization of good police practices by writing down a defendant's volunteered statements does not amount to the functional equivalent of interrogation.

Tail volunteered information during the trip from Pine Ridge to Rapid City.  Volunteered statements are not products of interrogation, and thus, not subject to Miranda.  Chipps, 410 F.3d at 445; Lockett, 393 F.3d at 837.  Accordingly, Tail's motion to suppress the vehicle statement is denied.

Based on the foregoing discussion, it is hereby

ORDERED that defendant's written objections to the Magistrate Judge's Findings and Recommendations are overruled (Docket 103).

IT IS FURTHER ORDERED that the court adopts the Magistrate Judge's Findings and Recommendations (Docket 100) as supplemented by this opinion and the motion to suppress (Docket 42) is denied.

Dated August 31, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE