UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 04-50026-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ROBERT RAYMOND TAIL, | ) | |
| | ) | |
| Defendant. | ) | |

The government moves in limine to preclude defendant, the attorney for defendant, or any witnesses from making any comment or reference regarding J.H.'s Hepatitis B diagnosis. Defendant Tail opposes the motion and contends that the evidence is admissible because it bears on JH's credibility, is exculpatory to defendant, and is evidence to show that J.H. was sexually active with other men. For the following reasons, the motion is granted.

The indictment alleges that Tail engaged in sexual contact with J.H. in April of 2003. J.H. disclosed to the forensic interviewer that this incident involved touching only and did not involve the exchange of seminal fluids. The government has indicated that it intends to offer evidence that Tail was convicted in state court of sexual abuse against J.H. for acts that were alleged to have occurred on May 24, 2003. This sexual assault did involve

the exchange of seminal fluids. The results of J.H.'s Hepatitis B test, which was conducted July 16, 2003, reflect that J.H. was a chronic carrier of Hepatitis B. Tail, who was tested on August 16, 2005, tested negative for Hepatitis B.

 Dr. Lori Strong, a pediatrician with a sub-speciality in child abuse and neglect, testified that in her opinion and according to the statistics, it is highly likely that J.H. contracted hepatitis when she was under age 5 because the disease had moved to the chronic carrier stage. She further testified that a person in a chronic carrier stage has a low chance of passing the disease to others through sexual contact. In her opinion, even with repeated sexual exposures, it is fairly unlikely for a chronic carrier to pass Hepatitis B to another person. Dr. Strong stated that Hepatitis B can be contracted in utero (mom to baby), from needles (tatoo), from blood contact, and from sexual contact (usually in bloody body fluids).

 Dr. Strong testified that when she interviewed J.H., J.H. denied that she currently had sexual relations with any partners, other than Tail. Dr. Strong did not ask her about boyfriends in 2002 and 2003. Dr. Strong also testified that if J.H. had been in an acute stage on May 24, 2003, she would have tested positive for the E antibody and the E antigen at the time of the July 16 test. Instead, J.H. was positive for the E antibody and negative for the E antigen. Based on this test result, Dr. Strong concluded

that J.H. was in a chronic stage in July.  Dr. Strong further testified the E antigen rises and falls eight to twelve weeks from when infected.  Thus, Dr. Strong concluded that J.H. had to have been infected at least eight to twelve weeks before July 16.  Tail offered no medical evidence to rebut the opinions of Dr. Strong.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 concludes that "[e]vidence which is not relevant is not admissible."

### A.   Bearing on J.H.'s Credibility

Tail contends that the evidence is admissible to call into question J.H.'s credibility because a juror could conclude that J.H. lied when she told Dr. Strong that she had no other sexual partners.  Tail argues that the fact that she tested positive for Hepatitis B is proof that she had other sexual partners.  As Dr. Strong testified, a patient can contract Hepatitis B in multiple ways other than sexual contact, including in utero, from needles, and from blood contact.  In Dr. Strong's opinion, J.H. likely contracted Hepatitis B prior to age 5 because it had moved into a chronic condition.  The court has not been presented with any evidence that would make it more probable that J.H. contracted Hepatitis B from a third-party sexual

partner. In fact the evidence supports a finding that it is less probable that J.H. contracted Hepatitis B from a third-party sexual partner.

Even if J.H. lied to Dr. Strong about whether she had other sexual partners, the evidence of Hepatitis B is not admissible to impeach the victim's truthfulness and show her capability to fabricate a story about the sexual abuse. See United States v. White Buffalo, 84 F.3d 1052, 1053 (8th Cir. 1996) (test results not admissible for impeachment because Rule 412 bars admission of evidence of the past sexual behavior of an alleged rape victim in the absence of an applicable exception).

### B. Exculpatory to Tail

Tail contends that the evidence is exculpatory to him because if he in fact sexually abused J.H. in May of 2003, then he would have tested positive for Hepatitis B. Because he did not test positive for Hepatitis B, he contends this evidence is exculpatory and should be admitted. Dr. Strong testified that, in her opinion, because J.H. was in a chronic carrier stage in May of 2003, there was an extremely low chance that she would pass the Hepatitis B antibody through a one-time sexual act to another person. Because only seven weeks and four days passed between the sexual abuse in May and the test in July, the time frame of less than eight weeks confirms that J.H. was in a chronic stage at the time of the abuse. Tail did not present any evidence to the court to contradict this expert opinion. As a

4

result, the court has not been presented with any evidence that would exculpate Tail.  Furthermore, in essence, Tail is attempting to introduce this evidence to collaterally attack his state court conviction on the May sexual abuse allegation.  Thus, under Tail's theories, the evidence would be relevant to show that because J.H. lied regarding the May incident, she must be lying regarding the April allegation.  Such a conclusion is tenuous at best and the minimal probative value would be outweighed by the unfair prejudice arising from the admission of the evidence.

In the alternative, Tail contends that the evidence would exculpate him as to the April abuse allegation because J.H. may have been in the acute stage at that time and thus she was more likely to transmit the disease.  Dr. Strong testified, however, that if sex is attempted and there is no ejaculation, then there is zero percent chance of contracting Hepatitis B because there is no passing of bodily fluids.  As the court understands the April abuse allegation of J.H., the evidence could not exculpate Tail because the contraction of Hepatitis B requires the passing of seminal fluids.  If J.H.'s description at trial of the sexual act that occurred in April includes passing of seminal fluids, defendant should ask the court for a hearing outside of the presence of the jury for purposes of reconsidering its order.

### C.     Proof That J.H. Was Sexually Active With Others

Tail also offers the evidence to prove that J.H. was sexually active with others.  Such evidence is barred by Rule 412 unless it falls under one of the exceptions noted in Rule 412(b).  As discussed in the court's order dated August 30, 2005, Tail has not identified an applicable exception.

If the evidence were received, the risk of unfair prejudice and confusion of the issues is great.  In light of the minimal probative value, the court finds the evidence is not admissible.

Accordingly, it is hereby

ORDERED that the government's motion in limine (Docket 108) to preclude defendant, attorney for defendant, or any witnesses from making any comment or reference, whether direct or indirect, to J.H.'s Hepatitis B diagnosis is granted.

Dated September 1, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE